# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**UNITED STATES OF AMERICA**

**v.**

**JIMMY JOEL BEASLEY,**

              **Defendant.**

**CRIMINAL FILE NO.**

**1:07-CR-115-TCB**

**Magistrate Judge Gerrilyn G. Brill**

## REPORT AND RECOMMENDATION

Defendant Jimmy Joel Beasley ("Defendant") is charged with one count of traveling in interstate commerce and failing to register as a sex offender in violation of 18 U.S.C. § 2250(a).  Pending before the court is Defendant's Motion to Dismiss for Violation of the United States Constitution.  (Doc. 21)[1].  All transcript references are to an evidentiary hearing held before the undersigned magistrate judge on June 8, 2007.

## I.   FACTS

Defendant was convicted of child molestation in Mississippi in October 1985 and was sentenced to ten years in custody.  His sentence was to run consecutively to a fifteen

---

[1]Defendant's other pending motions will be addressed in a separate Report and Recommendation.

year sentence from Tennessee.  Defendant was released from prison in 2002 in Mississippi. (Gov. Exs. 2, 3).  In Mississippi, Defendant signed forms which notified him of his duty to register as a sex offender in Mississippi every 90 days and in any state to which he might move.  (Tr. 10-11; Gov. Ex. 3).  He last registered in Mississippi in January of 2006.  Defendant traveled to Georgia from Alabama in January of 2007 and worked at a carnival in Georgia.  (Tr. 34).  Defendant did not register as a sex offender in Georgia.  He did not leave the State of Georgia between January 2007 and his arrest on March 14, 2007.

## II.   <u>STATUTORY AND REGULATORY BACKGROUND</u>

On July 27, 2006, President George W. Bush signed into law the Adam Walsh Act.  Title I of the Act is referred to as the Sex Offender Registration and Notification Act ("SORNA"), Pub. L. No. 109-248, 120 Stat. 590 (codified at 42 U.S.C. § 16901 (July 27, 2006)).  Section 141(a) of SORNA, codified at 18 U.S.C. § 2250(a), creates a new federal felony for failure to comply with SORNA's registration requirements.  It provides as follows:

**(a)**     **In general.** – Whoever –

    **(1)**     is required to register under the Sex Offender Registration and Notification Act;

    **(2)**     **(A)**     is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

           **(B)**     travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

    **(3)**     knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

SORNA's registration statute, § 113 of SORNA, codified at 42 U.S.C. § 16913, provides as follows:

**(a)**     **In general**

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.   For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

**(b)     Initial registration**

The sex offender shall initially register –

**(1)**     before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

**(2)**     not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

**(c)     Keeping the registration current**

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.  That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

**(d)     Initial registration of sex offenders unable to comply with subsection (b) of this section**

The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

**(e)**     **State penalty for failure to comply**

> Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.[2]

On February 28, 2007, the Attorney General issued an interim rule providing that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3 (2007).  On that date, the Attorney General also issued an explanation of the interim rule. 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007).  This explanation is discussed in context below.

## III.   MOTION TO DISMISS

### A.     Alleged Ex Post Facto Violation

Defendant argues that the indictment against him should be dismissed because, at the time of his interstate travel in January of 2007, 18 U.S.C. § 2250(a) did not apply to

---

[2]Hereinafter, the undersigned refers to SORNA's registration statute by the section at which it is codified, 42 U.S.C. § 16913.  Several cases cited herein, however, refer to the statute as § 113.

him.  He argues that § 2250 did not become applicable to him until February 28, 2007, the date on which the Attorney General issued an interim regulation under the authority of § 16913(d), and therefore his conviction for violating that law would violate the Ex Post Facto Doctrine.

Article I, Section 9, subsection (3) of the United States Constitution states:  "No Bill of Attainder or Ex Post Facto law shall be passed."   The Supreme Court has summarized the Ex Post Facto Doctrine as follows:

> The Ex Post Facto prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed. . . . The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation.
>
> In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be Ex Post Facto:  it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.
>
> *  *  *  *
>
> Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.  Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it

6

> violates the Clause if it is both retrospective and more onerous
> than the law in effect on the date of the offense.

Weaver v. Graham, 450 U.S. 24, 28-31 (1981)(internal citations and quotation marks omitted).

The government argues that Smith v. Doe, 538 U.S. 84 (2003), governs the Ex Post Facto issue presented in this case. The undersigned disagrees with that argument. In Smith, the issue was whether the registration requirement within Alaska's Sex Offender Registration Act violated the Ex Post Facto Clause as to sex offenders convicted before the enactment of those requirements. The Court held that it did not. Smith v. Doe, 538 U.S. at 105-06. Here, the issue is very different. It is whether imposing criminal penalties for traveling to and residing in a new state and not registering as a sex offender in that new state at a time before the Attorney General issued his interim regulation violates the Ex Post Facto Clause. Thus, while Smith v. Doe stands for the proposition that Defendant could be required to register in Georgia without violating the Ex Post Facto Clause, it does not answer the question of whether he can be prosecuted for his interstate travel and failure to timely register after he arrived in Georgia.[3] See United States v. Stinson, No. 3:07-00055, 2007 WL 2580464, at *4

---

[3]Several cases have addressed the situation in which a defendant traveled in interstate commerce before July 27, 2007, the effective date of SORNA. The following

(S.D. W.Va., Sept. 7, 2007); and United States v. Muzio, No. 4:07CR179 CDP, 2007 WL 2159462, at *6 (E.D. Mo., July 26, 2007).

To the extent that the government is arguing that failing to register as a sex offender is a continuing violation of § 2250, and that Defendant continued to commit this offense until his arrest on March 14, 2007, by residing in Georgia during that time without registering as a sex offender, the undersigned rejects that argument as well.  The undersigned agrees with those courts that have held that a violation of § 2250 is complete

---

cases found no Ex Post Facto violations in criminal prosecutions for pre-SORNA travel: United States v. Madera, 474 F.Supp.2d 1257, 1263-64 (M.D. Fla. 2007); United States v. Templeton, No. CR-06-291-M, 2007 WL 445481, at *5 (W.D. Okla., Feb. 7, 2007); United States v. Manning, No. 06-20055, 2007 WL 624037, at *1 (W.D. Ark., Feb. 23, 2007); United States v. Markel, No. 06-20004, 2007 WL 1100416, at *2 (W.D. Ark. Apr. 11, 2007); United States v. Torres, No. 07-50035, 2007 WL 2343884, at *2 (W.D. Ark., Aug. 15, 2007); and United States v. Kelton, No. 5:07-cr-30-Oc-10GRJ, 2007 WL 2572204, at *1 (M.D. Fla., Sept. 5, 2007).  To the extent that these cases relied on Smith v. Doe for their conclusion, the undersigned does not agree with their reasoning. However, the undersigned notes that the court in Templeton agreed with the conclusion discussed below, that § 16913(d) applies only to individuals who were unable to initially register as sex offenders.  Templeton, 2007 WL 445481, at *4.

Other cases have dismissed charges for pre-SORNA travel.  See United States v. Bobby Smith, 481 F.Supp.2d 846, 854 (E.D. Mich. 2007) (finding that criminal statute does not apply to pre-SORNA travel); United States v. Barnes, No. 07 Cr. 187, 2007 WL 211989, at *3-6 (S.D. N.Y., July 23, 2007) (dismissing indictment for pre-SORNA travel as violative of due process); and Order at 7, United States v. Sallee, No. CR-07-152-L (W.D. Okla., Aug. 13, 2007) (No. 32) (finding that prosecution for pre-SORNA travel would violate the Ex Post Facto Clause).  Because Defendant Beasley traveled in interstate commerce after July 27, 2006, these cases are not directly on point.

when a defendant travels in interstate commerce and then fails to register within the time prescribed by the statute (three business days). See Stinson, 2007 WL 2580464, at *7; Order at 7, United States v. Sallee, No. CR-07-152-L (W.D. Okla., Aug. 13, 2007)(No. 32); and Bobby Smith, 481 F.Supp.2d 846, 851-52 (E.D. Mich. 2007).

Nevertheless, because the undersigned concludes that Defendant was, in January 2007, a person required to register under SORNA in Georgia,[4] the undersigned rejects Defendant's argument that the government is precluded from prosecuting him because of the Ex Post Facto Doctrine.

As applied to Defendant, the elements of the criminal offense are that he: (1) was required to register under SORNA; (2) traveled in interstate commerce; and (3) knowingly failed to register or update a registration as required by SORNA. Defendant argues that he was not required to register under SORNA until the Attorney

---

[4]In his motion, Defendant asserts that Georgia has not passed legislation implementing SORNA. The court rejects Defendant's argument that the indictment should be dismissed on this ground. Georgia had a sex offender registration requirement at the time Defendant moved to Georgia. See Ga. Code Ann. § 42-1-12. Registration under SORNA means registration under a state's sex offender registration rules. A federal law requiring states to create sex offender registries or lose federal funds has been in effect since 1994. See Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C. § 14071.

If circumstances beyond Defendant's control prevented him from complying with Georgia's requirements, he is entitled to assert those circumstances as an affirmative defense. See 18 U.S.C. § 2250(b).

General issued his regulation on February 28, 2007, and therefore, at the time he traveled, he was not a person "required to register under SORNA."

Title 42 U.S.C. § 16913(a) answers the question of who is required to register in uncomplicated terms: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  For purposes of his motion, Defendant does not dispute that the government will be able to prove that he falls within the definition of a sex offender, that he traveled to Georgia in January of 2007 where he then resided and became employed, or that he did not thereafter register as a sex offender in Georgia within three business days (or at any time prior to his arrest in March 2007).

Defendant's argument that he was not required to register in Georgia under SORNA until February 28, 2007, is based on § 16913(d), which provides as follows:

> **(d)**      **Initial registration of sex offenders unable to comply with subsection (b) of this section**
>
> > The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

10

Defendant argues that § 16913(d) directed the Attorney General to determine whether SORNA applied to sex offenders convicted before July 27, 2006, and until the Attorney General did so on February 28, 2007, SORNA's registration requirements did not apply to him.  He argues that the Attorney General's regulation cannot be applied to him retroactively without violating the Ex Post Facto Clause.

Numerous courts have addressed the question presented here, *i.e.,* whether SORNA applies to a defendant who was convicted before the date of the Act and then traveled across state lines and failed to register during the gap in time between the statute's enactment and the Attorney General's rule stating that the Act applies to individuals whose convictions pre-date SORNA.  The courts in the following cases agreed with Defendant's argument and held that SORNA did not require registration as a sex offender for individuals who traveled during this "gap" period:  United States v. Kapp, 487 F.Supp.2d 536, 542 (M.D. Pa. 2007); United States v. Marvin L. Smith, No. 2:07-CR-00082, 2007 WL 1725329, at *4 (S.D. W.Va., June 13, 2007); United States v. Muzio, No. 4:07CR179 CDP, 2007 WL 2159462, at *5 (E.D. Mo., July 26, 2007); United States v. Heriot, Cr. No. 3:07-323, 2007 WL 2199516, at *2 (D.S.C., July 27, 2007); United States v. Stinson, No. 3:07-00055, 2007 WL 2580464, at *6 (S.D. W.Va., Sept. 7, 2007); United States v. Cole, No. 07-cr-30062-DRH, 2007 WL 2714111, at *3

11

(S.D. Ill., Sept. 17, 2007).  See also United States v. Deese, No. CR-07-167-L, 2007 WL 2778362, at *2 (W.D.Okla., Sept. 21, 2007)(involving pre-SORNA travel, but holding that, until the Attorney General acted, the registration requirements of SORNA did not apply to persons convicted before July 27, 2006).  In several of these cases, the courts went on to find that the Attorney General's regulation could not be applied retroactively to individuals who traveled before it was issued without violating the Ex Post Facto Clause.  See Muzio, 2007 WL 2159462 at * 5; Stinson, 2007 WL 2580464 at *6; and Cole, 2007 WL 2714111 at *3.

In contrast, the courts in the following cases held that, as of the date of the enactment of SORNA, July 27, 2006, all sex offenders were required to register in the states where they resided, and that § 16913(d) has no bearing on that requirement because it applies only to sex offenders who were unable to comply with the *initial* registration requirements: United States v. Hinen, 487 F.Supp.2d 747, 750-51 (W.D. Va. 2007); United States v. Mason, No. 6:07-cr-52-Orl-19JGG, 2007 WL 1521515, at *3 (M.D. Fla., May 22, 2007); United States v. Roberts, No. 6:07-CR-70031, 2007 WL 2155750, at *2 (W.D.Va., July 27, 2007); United States v. Gonzales, No. 5:07cr27-RS, 2007 WL 2298004, at *4 (N.D. Fla., Aug. 9, 2007); United States v. Sawn, No. 6:07cr00020, 2007 WL 2344980, at *2 (W.D.Va., Aug. 15, 2007); and United States

v. May, Nos. 4:07-cr-00164-JEG and 1:07-cr-00059-JEG, 2007 WL 2790388, at *4 (S.D. Iowa, Sept. 24, 2007). For reasons explained below, the undersigned agrees with the conclusions of the latter group of cases and finds that Defendant was a person required to register under SORNA in January 2007, prior to the Attorney General's regulation, and therefore, the prosecution of Defendant does not present an Ex Post Facto problem.

The plain language of SORNA set forth in § 16913(a) requires a sex offender to register and keep his registration current in the jurisdiction where he resides and works. As the Act was signed into law on July 27, 2006, a plain reading of § 16913(a) leads to the conclusion that any sex offender who did not so register after July 27, 2006, was not in compliance with the Act's registration requirements. Nothing in § 16913(d), the delegation to the Attorney General, changes that result.

Subsection 16913(d) gives the Attorney General the authority to issue regulations only with respect to those who are unable to comply with the "initial registration" requirements of § 16913. This construction is supported by the title phrase immediately following (d): "Initial registration of sex offenders unable to comply with subsection (b) of this section." This phrase clearly indicates that subsection (d) only applies to

13

individuals who were unable to initially register as a sex offender.[5] See Templeton, 2007 WL 445481, at *4.

Of the cases that support Defendant's position, Muzio and Kapp have the most detailed analysis of subsection (d).  The undersigned will therefore focus on the reasoning in these cases.

This court disagrees with the analysis and conclusions in Muzio and Kapp that only the § 16913(d)'s title raises any question about the meaning of § 16913(d).  These courts reasoned that the text of § 16913(d) contemplates two groups of sex offenders: (1) past offenders and (2) those unable to initially register under subsection (b).  The court in Kapp stated as follows: "Significantly, the first clause of § 113(d), which addresses SORNA's applicability, only covers the first group: past offenders.  Therefore, when the two clauses are read in conjunction, the first clause of § 113(d) unambiguously provides the Attorney General with authority to define the retrospective applicability of SORNA's registration requirements to past offenders." Kapp, 487 F. Supp. at 542; see also Muzio, 2007 WL 2159462 at *4; and Deese, 2007 WL 2778362, at *2-3.

---

[5] Defendant was able to initially register in Mississippi.  He registered as a sex offender in Mississippi as required by Mississippi law when he was released from prison in 2002, and he kept his registration current until the spring of 2006.  (Tr. 12).  Therefore, §16913(d) is irrelevant to this prosecution.

14

Contrary to the courts' findings in <u>Muzio</u> and <u>Kapp</u>, the undersigned concludes that the text of § 16913(d), when considered in isolation and out of context, is ambiguous. An additional possible meaning of subsection (d) is that past offenders ("offenders convicted before the enactment of this Act") are included within (and not a separate group from) the broader category of "sex offenders who are unable to comply with subsection (b)," and it is only as to those "sex offenders who are unable to comply with subsection (b)" that the Attorney General was given authority under subsection (d) to issue clarifying regulations.[6] In light of this ambiguity, the title of subsection (d) should be considered. See <u>I.N.S. v. National Center for Immigrants' Rights, Inc.</u> 502 U.S. 183, 189 (1991) (noting that "the title of a statute or section can aid in resolving an ambiguity in the legislation's text"). Once the title is considered, the ambiguity in the one sentence text that follows the descriptive title is resolved, and it becomes clear that

---

[6]By using the word "other" to modify the noun phrase "categories of sex offenders who are unable to comply with subsection (d)," the statute implies that offenders convicted prior to the law's enactment are one of the categories of offenders unable to comply with subsection (b). As noted above, this interpretation would limit the Attorney General's authority to providing regulations instructing offenders unable to comply with subsection (b) on how they should *initially* register. These regulations would have no impact on subsection (c), which requires sex offenders to notify authorities when they change residences.

subsection (d) only applies to initial registration.[7]  This construction makes sense when one considers that a sex offender convicted before July 27, 2006, would, in many cases, be unable to comply with the *initial* registration requirements of SORNA because the time limits for initial registration would have already passed when SORNA was enacted. Accordingly, the undersigned agrees with this analysis from Roberts:

> Subsection (d), as its title reveals, is very narrow in scope: only those currently unregistered offenders literally *unable* to comply with (b) because of the age of their convictions are within the grey area which the Attorney General is authorized to illuminate by rule.  In this subsection, Congress did distinguish between convictions from before and after the enactment of the act.  But it is clear from the context that their intent was not to exempt all sex offenders convicted before July 2006 from registration requirements, but rather to avoid the obvious injustice of requiring such offenders to do the impossible by registering within 3 days of their years-old convictions.

Roberts, 2007 WL 2155750, at *2 (emphasis in original).

---

[7]Moreover, when a descriptive title is followed by only one sentence, it makes sense that the title and text should be considered together.  In this situation there can be no doubt that the title applies to the text that follows.  Otherwise, the title would be completely meaningless.  Cf. Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 528-29 (1947)(stating that in the context of "complicated and prolific text" following headings and titles, "headings and titles can do no more than indicate the provisions in a most general manner," and that "the title of a statute and the heading of a section cannot limit the plain meaning of the text").

The comments accompanying the Attorney General's interim rule provide the following example of an individual who was initially unable to register and thus covered by subsection (d):

> Consider the case of an offender who was convicted of, and sentenced to probation for, a sex offense within the categories for which SORNA requires registration prior to the enactment of SORNA, but who did not register near the time of his sentencing because the offense in question was not subject to a registration requirement under federal law or applicable state law at the time. Following the enactment of SORNA, registration by the sex offender within the formal time period specified in SORNA § 113(b)(2) – not later than three business days after sentencing – is not possible, because that time is past. Under section 113(d), the Attorney General has the authority to specify alternative timing rules for registration of offenders of this type.

72 Fed. Reg. 8894, 8896 (Feb. 28, 2007); 28 CFR 72.3. Some additional categories of sex offenders who may have been unable to comply with SORNA's intial registration requirements are noted in Hinen, 487 F.Supp.2d at 752 n.4. As discussed in that case, the more limited interpretation of § 16913(d) is consistent with Congress' intent to apply SORNA to the large number of sex offenders convicted prior to SORNA's enactment. Id. at 752-53. The court in Hinen cited comments in the Congressional Record demonstrating that it was Congress' desire to establish a comprehensive and uniform sex offender registration system to ensure that offenders could not evade requirements by

17

moving between states.  The co-sponsor of the bill, Senator Orrin Hatch, referred to estimates of up to 100,000 missing sex offenders in the United States.  Id. at 753 n.5. As stated in Hinen: "It would be illogical for members of Congress to express concern that thousands of sex offenders who were required to register under state law were evading those registration requirements and then exempt those same offenders from SORNA."  Id. at 753.  See also Roberts, 2007 WL 2155750, at *2 ("The intent of SORNA was to improve the registration and tracking of existing known sex offenders, not merely those who might be convicted after the effective date.").

Some courts have used the fact and wording of the Attorney General's February 28, 2007 interim regulation to support their conclusion that the Attorney General had in fact been given the authority under § 16913(d) to decide whether past offenders were required to register under SORNA.  See Stinson, 2007 WL 2580464, at *6 n.9; Marvin L. Smith, 2007 WL 1725329, at *4.  The undersigned does not believe that the issuance of the interim regulation and the language contained therein can be construed to support this conclusion.  The Attorney General stated his position as follows:

> *Considered facially,* SORNA requires all sex offenders who
> were convicted of sex offenses in its registration categories to
> register in relevant jurisdictions, with no exception for sex

18

offenders whose convictions predate the enactment of SORNA. <u>See</u> SORNA §§ 111(1), (5)-(8), 113(a).

\* \* \* \*

If SORNA were deemed inapplicable to sex offenders convicted prior to its enactment, then the resulting system for registration of sex offenders would be far from "comprehensive," and would not be effective in protecting the public from sex offenders because most sex offenders who are being released into the community or are now at large would be outside of its scope for years to come. For example, it would not apply to a sex offender convicted of a rape or child molestation offense in 2005, who is sentenced to imprisonment and released in 2020. Nevertheless, sex offenders with predicate convictions predating SORNA who do not wish to be subject to the SORNA registration requirements, or who wish to avoid being held to account for having violated those requirements, have not been barred from attempting to devise arguments that SORNA is inapplicable to them, e.g., because a rule confirming SORNA's applicability has not been issued. This rule forecloses such claims by making it indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted. The Attorney General exercises his authority under section 113(d) of SORNA to specify this scope of application for SORNA, regardless of whether SORNA would apply with such scope absent this rule, in order to ensure the effective protection of the public from sex offenders through a comprehensive national system for the registration of such offenders.

72 Fed.Reg. 8894, 8896 (Feb. 28, 2007)(emphasis added).

The Attorney General's language strongly suggests that he disagreed with the interpretation of § 16913(d) argued by defendants and accepted by some courts that SORNA does not apply to previously convicted sex offenders absent a regulation so stating.  Given this wording of the supplementary information, the likely explanation for the issuance of the interim rule is that the Attorney General was acting to foreclose any future arguments that SORNA was not applicable to past offenders.

Even if SORNA is open to the interpretation that Defendant asserts – that Congress gave the Attorney General the authority to determine the applicability of SORNA to all sex offenders with convictions pre-dating its enactment – the court would reject that interpretation because the statute would then violate the Constitution by ceding Congress' core legislative function to the executive branch.  Defendant in fact argues  that such a construction of the statute would violate the non-delegation doctrine of the Constitution.  (Doc. 37 at 15).  As stated in Hinen:

> [T]he canon of constitutional avoidance preponderates in favor of finding that Congress did not cede its core legislative functions to the executive branch by the language in subsection (d).  See Gonzales v. Carhart, --- U.S. ---, 127 S.Ct. 1610, 1631, 167 L.Ed.2d 480 (2007)(stating that it is an elementary rule of statutory construction that every reasonable construction should be utilized to save a statute from unconstitutionality); Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575,

> 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988)(holding that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, [the statute should be construed] to avoid such problems unless such construction is plainly contrary to the intent of Congress."); see also Indus. Union Dep't v. Am. Petroleum Inst., 448 U.S. 607, 646, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980)(stating that it is preferable to interpret a statute so as to avoid a construction that gives "a sweeping delegation of legislative power" to another branch of government).

Hinen, 487 F.Supp.2d at 754.

In addition, even if one assumes that Congress gave the authority to the Attorney General to exclude virtually all existing sex offenders from the application of SORNA, the express language of the statute does not require him to act; it simply gives him the authority to do so.  In other words, the Attorney General was not required to issue regulations; he was allowed to exercise his discretion on whether to do so.  In contrast, when Congress wanted to require the Attorney General to act, it knew how to make that requirement clear.  See 42 U.S.C. § 16917(b)(providing that "[t]he Attorney General *shall prescribe rules* for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section")(emphasis added).[8]  In the absence of any exercise of the Attorney General's authority to establish a contrary rule, the clear

---

[8]Subsection (a) of § 16917 requires state officials to give sex offenders notice of their obligations under SORNA.

21

language of §§ 16913(a) and (c) required Defendant to register as a sex offender upon his arrival in Georgia.

### B.      <u>Non-Delegation Doctrine</u>

As stated above, Defendant argues that as applied to a sex offender convicted before July 27, 2006, SORNA is unconstitutional because the statute's grant of authority to the Attorney General under 42 U.S.C. § 16913(d) violates the non-delegation doctrine of the Constitution.  This argument is premised on Defendant's argument that Congress delegated to the Attorney General the decision of whether to make SORNA applicable to sex offenders convicted before the enactment of the statute.  The court has rejected that argument.   As interpreted by the court, the statute does not violate the non-delegation doctrine.

### C.      <u>Due Process</u>

Defendant also argues that, because it was not clear until February 28, 2007, that he was required to register as a sex offender, his due process rights are being violated because he was not given sufficient notice prior to his arrest that he was required to register in Georgia.  As discussed above, the plain language of § 16913(a) of the Act,

effective July 27, 2006, required Defendant to register in Georgia after moving to the state in January 2007.  Further, the government's evidence shows that Defendant was given notice when he was released from prison in 2002 that he was required to register in any state in which he was employed.  (Gov. Ex. 3).  Thus, the undersigned rejects Defendant's due process argument.

Defendant also argues that the registration requirements of SORNA deprive him of substantive due process.  The Eleventh Circuit has previously rejected the claim that sex offender registration requirements violate an individual's substantive due process rights, and there is no basis to distinguish this authority.  See Doe v. Moore, 410 F.3d 1337, 1345-46 (11th Cir. 2005).  See also Gonzales, 2007 WL 2298004, at *10-11 (rejecting defendant's argument that SORNA and 18 U.S.C. § 2250 violate procedural and substantive due process rights); Hinen, 487 F.Supp.2d at 753-54 (same).

### D.   Commerce Clause

Defendant alleges that 18 U.S.C. § 2250 violates the Commerce Clause because it fails to establish a constitutionally sufficient nexus to the regulation of interstate commerce.

The power to regulate commerce between the states includes the power to regulate the following:

(1)   "the use of the channels of interstate commerce";

(2)   "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and

(3)   "those activities having a substantial relation to interstate commerce"

United States v. Lopez, 514 U.S. 549, 558-59 (1995).

In order for Defendant to be convicted, the government must prove that he traveled in interstate or foreign commerce and thereafter failed to register as required by SORNA.  See 18 U.S.C. § 2250(a)(2)(B).  The statute derives its authority from the second prong of Lopez – the ability to regulate persons or things in interstate commerce. It is well established that Congress may forbid or punish the use of channels of interstate commerce "to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin."  Brooks v. United States, 267 U.S. 432, 436 (1925).  Therefore, the statute contains a sufficient nexus to interstate commerce. See Hinen, 487 F.Supp.2d at 757-58; Gonzales, 2007 WL 2298004, at * 9 (holding that 18 U.S.C. § 2250 does not violate the Commerce Clause).

24

**E.**   **State Sovereignty/Congressional Spending Power**

Finally, Defendant argues that SORNA unconstitutionally forces states into implementing its provisions "by taking away from the States funds that they would otherwise get."  (Doc. 37 at 21).  Defendant does not have standing to make this argument.  See Printz v. United States, 521 U.S. 898, 935 (1997)("These provisions burden only firearms dealers and purchasers, and no plaintiff in either of those categories is before us here.  We decline to speculate regarding the rights and obligations of parties not before the Court." )(citations omitted).

**IV.**   **CONCLUSION**

For reasons discussed above, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. 21) be **DENIED**.

**IT IS SO RECOMMENDED** this 10th day of October, 2007.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

T:\FINAL.CRM\Beasley.wpd